Argued November 26; affirmed December 10, 1940; rehearing
denied January 7, 1941

## MARSTERS *v.* ASHTON ET AL.
### (107 P. (2d) 981)

508

*B. L. Eddy*, of Roseburg, for appellant.
*H. A. Slack*, of Coquille, for respondents.

LUSK, J. The case made by the plaintiff may be briefly summarized as follows: He neglected to consult an attorney and make an appearance in a suit in which he was duly and regularly served with summons because of assurances given him that arrangements were being made for payment of the claim sued upon. Learning afterwards of the entry of a decree against him on account of his default, he filed a motion to vacate the decree, which the court took under advisement. More than a year went by without a decision on the motion. He concedes that the court had then lost jurisdiction to grant any relief under § 1-907, Oregon Code 1930, which provides in part that that court may "in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect.": *Lawson v. Hughes*, 127 Or. 16, 256 P. 1043, 270 P. 922; *Nicklin v. Robertson*, 28 Or. 278, 42 P. 993, 52 Am. St. Rep. 790. He also concedes that where a party invokes a remedy under the statute he is precluded "from equitable relief of

like character based upon grounds identical with those there employed": *Miller v. Shute*, 55 Or. 603, 609, 107 P. 467; *Thompson v. Connell*, 31 Or. 231, 236, 48 P. 467, 65 Am. St. Rep. 818.

But, he contends that this rule ought not to be held applicable to this case, because his effort to obtain relief under § 1-907 was frustrated, at least in part, by the failure of the circuit judge to pass on the motion to vacate within the jurisdictional time, and by his refusal after that time to enter some kind of an order *nunc pro tunc* on that motion. In other words, he claims that he has lost his right of appeal through the inaction of the judge, and that this special circumstance warrants a court of equity in assuming jurisdiction even though the grounds for relief now urged are identical with those set forth in his motion to vacate.

■ The question about the motion for an order *nunc pro tunc* seems to us to be only incidental and to have little, if any, bearing upon the decision. The plaintiff says that such an order could and should have been entered, because Loreman, the plaintiff in the foreclosure suit, died within the year during which the motion to vacate might have been determined; and he cites *In re Potter's Estate*, 154 Or. 167, 59 P. (2d) 253, in which it is held that where a party to an action which is ripe for judgment dies, the court may make an order for the entry of a judgment *nunc pro tunc*, notwithstanding no order had been made theretofore. But that rule, obviously, cannot be applied here, because at the time the motion was made the court had lost jurisdiction, which means simply that it had lost the power to act. As the judge said in passing on the motion:

"If the plaintiff had never died at all, still the court would have no jurisdiction to enter any order setting

aside the decree after April, 1936. The defendant Marsters cannot be in any better position by reason of the death of the plaintiff than he would have been if the plaintiff had not died.''

■ Still, it is true that the plaintiff in this suit lost his right of appeal because no decision upon his motion to vacate the decree was made during the year, and the question recurs whether for that reason he may invoke the jurisdiction of equity. Counsel lays all the onus upon the judge who heard the motion; but we think that counsel must share the responsibility. As Judge Skipworth, who has served more than 25 years upon the circuit court of this state, observed in his opinion sustaining the demurrer, it was the duty of the attorneys in the case to have called the attention of the court to the pendency of the motion and to have requested a decision within a year.

We do not, however, consider that point as the vital one of the case.

■ The effect of the circuit court's inaction was to deny relief to the plaintiff and, also, to cut off his right of appeal. The loss of that right is the sole ground of distinction between this case and those in which it is held that one unsuccessfully invoking the statutory remedy may not thereafter seek the same relief on identical grounds in equity. But, inasmuch as the full benefits of the statute are not available to one who has been denied the right of appeal through no fault of his own, we should suppose that the doors of a court of equity would not be closed against such a one, provided the grounds for relief set forth in his motion and repeated in his complaint are, if established, sufficient to have compelled a favorable decision from the circuit court. He would thus be accorded the same position

as a party who had appealed to this court from an adverse decision on the motion. More than that, it seems to us he could not reasonably demand. He would have the burden of alleging and proving that a decision of the circuit court denying the motion would have constituted nothing less than an abuse of discretion.

■ Judged by that standard, we think that the complaint is not sufficient.

The facts stated disclose neglect on the part of the plaintiff but not excusable neglect. There is no claim of fraud. The sole basis for relief is that the plaintiff relied on the assurances of two persons, who, as far as is revealed, were strangers to him, who were not parties to the litigation, but who "controlled" the Baker-Lynch Mining Company, a corporation, the plaintiff's codefendant. Some of these representations were made after the decree had been entered and are, therefore, obviously irrelevant. Those made before entry of the decree were indefinite in their nature—"that arrangements were being made for paying the outstanding obligations" of the corporate defendant. The plaintiff must have known that the corporation was in financial difficulties. So far as appears, Lynch and Baker, who made the statements, were strangers to the plaintiff and he knew nothing about them except that it was "reported" (we are not told by whom) that Lynch was "a man of some means and standing, being an osteopathic physician practicing in Salem, Oregon". But Lynch made no promise that he would pay the claims sued upon.

Giving to these allegations all the weight to which they are reasonably entitled, we are unable to find that the plaintiff was justified in relying on these assurances, instead of responding to the summons which

warned him that if he failed to appear and answer within 20 days from the date of service, the plaintiff would apply to the court for a decree. Common prudence would have dictated that he take steps to protect his interests by retaining counsel and appearing in the case. Certainly, had the circuit court so held, it would not have been an abuse of discretion.

Counsel for plaintiff has cited in support of his position the case of *Nash v. Treat*, 45 Mont. 250, 122 P. 745, Ann. Cas. 1913E, 751, and a number of other cases found in the note at page 752 of Ann. Cas., *ibid*. These holdings are to the effect that, in certain circumstances, where a defendant in an action relies on the assurances of his codefendant that he will employ or has employed counsel to defend on behalf of both of them, and the codefendant fails to carry out his promise, as the result of which judgment by default is taken against the one relying upon the promise, the decision of the trial court setting aside such judgment will not be disturbed on appeal. In all these cases the assurances were definite and some special relationship is shown to have existed between the defendants which would justify the one in relying on the other. In *Nash v. Treat*, supra, the defendants were husband and wife. In *Pelegrinelli v. McCloud River Lumber Co.*, 1 Cal. App. 593, 82 P. 695, a personal injury action, the defendant accepted the statement of the agent of an insurance company which had issued to the defendant a policy requiring the company to appear and defend the action. *Williams v. Breen*, 25 Wash. 666, 66 P. 103, was also a personal injury action. The two defendants were engaged in the operation of a smelter where the injury occurred, and one of them informed the other that attorneys had been retained to defend them both. *Neat v. Topp*, 49 Ind.

App. 512, 97 N. E. 578, was a suit to foreclose a mechanic's lien in which one defendant was a vendee in a contract of sale of the real property involved and the other the vendor, who retained title to the property. The plaintiff was a contractor who had built a house on the property for the vendee. The vendee, York, told the owner, Matilda Topp, that it was his controversy, that he would employ counsel and defend the case for all, and have his attorneys represent Matilda Topp. York did employ counsel, but through inadvertence neglected to instruct them to appear for Matilda Topp, as the result of which default was taken against her. The plaintiff has also cited *Rowland v. Jones*, 49 Tenn. 321, but the case is wholly different. Fraud was present and other facts that indubitably called for an injunction against the enforcement of a manifestly inequitable judgment.

For the reasons which we have suggested, we think these decisions fall short of sustaining the plaintiff's position. Courts are inclined to liberality in exercising the power to relieve from judgments taken by default, since it is the policy of the law that, so far as can be done within statutory restrictions, causes shall be tried out upon their merits. But, since an order denying the plaintiff's motion would not have been set aside on appeal—it being at least a discretionary matter with the trial judge on the showing made—we are of the opinion that the plaintiff has not in his complaint stated facts which entitle him to equitable relief.

In the complaint in the foreclosure suit the plaintiff here was sued solely as owner of the property, and no facts were alleged which would authorize a personal judgment against him. Such a judgment would no doubt be void. *State ex rel. v. Franklin*, 163 Or. 500,

98 P. (2d) 724. But it is possible that sufficient will be realized at the execution sale to satisfy the judgment in full, and in that event no injury will have been done the plaintiff. We think, therefore, that it would be premature to grant relief in this regard until that question shall have been determined by the result of the sale.

The decree of the circuit court is affirmed.

RAND, C. J., and BELT and BAILEY, JJ., concur.