Action by Fay King against Murcell Mitchell and another, for loss of consortium of plaintiff's husband arising out of an automobile collision. The defendant Mitchell moved to be relieved from a default judgment.
The Circuit Court for Grant County, M.A. Biggs, J., made an order denying the motion, and movant appealed.
The Supreme Court, Lusk, C.J., held that movant was entitled to rely on the representation of his employer's personnel and safety director and the employer would defend the action, and that the court abused its discretion.
ORDER REVERSED, AND CAUSE REMANDED.
This is an appeal from an order denying a motion to set aside a default judgment. The defendant and appellant, Mercell (erroneously impleaded as Murcell Mitchell), was a defendant jointly with his employer Edward Hines Lumber Company, in an action brought by the respondent, Fay King, to recover for the loss of consortium of her husband, Robert L. King, resulting, as her complaint alleged, from injuries negligently inflicted upon him by the defendants. The alleged *Page 437 
injuries were sustained on August 30, 1943, in a collision between an automobile driven by King and another automobile owned by the defendant, Edward Hines Lumber Company, and operated by the defendant Mitchell as the Lumber Company's agent and employee.
The complaint was filed in Grant County on October 3, 1947, over four years after the accident occurred. Both defendants were served with summons and complaint in that county on October 20, 1947. The Lumber Company on October 28, 1947, demurred to the complaint on the ground that the action was barred by § 1-206, O.C.L.A., (the two-year statute of limitations). Ultimately the court sustained the demurrer and entered judgment for the defendant Lumber Company. Under the circumstances hereinafter recounted, the defendant Mitchell defaulted. After a hearing without a jury, the court, on May 12, 1948, entered judgment against Mitchell for $10,000.00 for loss of consortium, $2,500.00 medical expenses, and costs.
After learning of the judgment, Mitchell, on May 17, 1948, filed a motion, supported by affidavits and a showing of merits under § 1-1007, O.C.L.A., to be relieved from the default. The motion was denied by order entered April 11, 1949. The question is whether this was an abuse of judicial discretion.
The showing in support of the motion is uncontradicted and is to the following effect:
The defendant Mitchell made oath that he is an employee of the Edward Hines Lumber Company, resides at Seneca, Grant County, and, immediately after being served with summons and complaint on October 20, 1947, he delivered the papers at Seneca to Pat Maitland, the Safety and Personnel Director of the Lumber *Page 438 
Company, "and the person directly responsible in said company for the handling of such matters". Maitland told Mitchell that "he would arrange with the said Edward Hines Lumber Company for the proper defense of the action." Mitchell's affidavit proceeds: "That I heard nothing further from Pat Maitland or any other officials of said company, and assumed that my rights in said action were being protected until today (May 17, 1948), and I have just been informed that Default was taken against me on the 31st day of October, 1947, and that Judgment was taken against me in said case on the 12th day of May, 1948 * * *".
Pat Maitland, in a supporting affidavit, avers that, upon receiving the summons and complaint from Mitchell, "I advised Murcell Mitchell that the Edward Hines Lumber Co. would defend the action on his behalf and I took the Summons and Complaint to the Company's offices at Hines, Oregon, and contacted the General Manager, A.R. Dewey. The documents were forwarded to the Chicago office. I further state that since service was made on Murcell Mitchell that he has inquired as to the progress of the case and I have informed him that he was being defended by the insurance carrier."
R.E. Kriesien, an attorney, was retained by the Globe Indemnity Company to defend the Lumber Company in the action. He deposed in a supporting affidavit that he filed a demurrer on behalf of the Lumber Company, and that he had no knowledge that default had been entered against Mitchell until he received a copy of the judgment entry dated May 12, 1948. He further swore:
 "* * * I further state that upon receipt of the copy of Judgment I conferred with P.H. Maitland, employed by the Edward Hines Lumber Co., *Page 439 
and was informed that he had advised Murcell Mitchell that the Edward Hines Lumber Co. would defend this action on his behalf. I further state that the Edward Hines Lumber Co. failed to notify me of such facts and that prior to the 13th day of May, 1948, I had no knowledge that such representations had been made to Murcell Mitchell, nor that service of Complaint and Summons had been made upon the said Murcell Mitchell."
With the motion to vacate the defendant Mitchell tendered a demurrer based on the ground that the action was barred by § 1-206, O.C.L.A. Later an amended motion, with affidavits, was filed, but, as these added nothing material to the original motion, no further reference to them need be made.
As stated, Mitchell was served with summons and complaint on October 20, 1947, and, according to Mitchell's affidavit, default was taken against him on October 31, 1947. The record shows that the motion for a default order was filed November 4, 1947, and the order entered on the same day, although the order contains this recital, "dated in Chambers at Ontario, Oregon, this 31st day of October, 1947". The discrepancy, however, is of no importance here.
The Lumber Company's demurrer was argued orally on November 29, 1947, and taken under advisement by the court. On May 11, 1948, the court rendered an opinion in writing which held that the action against the Lumber Company was barred by the two-year statute of limitations. On the following day the hearing on the question of damages against Mitchell was had in Grant County, the plaintiff appearing in person and by her counsel. There were no other appearances. The judgment order of that date, May 12, 1948, sustains the demurrer of the Lumber Company, dismisses the *Page 440 
action against it, and gives judgment to it for costs, and awards judgment to the plaintiff against Mitchell as heretofore stated. A copy of the order was mailed on that day by counsel for the plaintiff to Casey Kriesien, attorneys for the Lumber Company, at Burns, Oregon.
Section 1-1007, O.C.L.A., provides:
 "The court may likewise, in its discretion, and upon such terms as may be just, allow an answer or reply to be made, or other act to be done after the time limited by this code, or by an order enlarge such time; and may also, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect."
The motion under consideration was filed pursuant to the second clause of the foregoing statute. There are certain well-established rules for the decision of such applications to which we now call attention. In Payne v. Savage, 51 Or. 463,465, 94 P. 750, the court, speaking through Mr. Justice Robert S. Bean, said:
 "An application to set aside a default or for permission to plead after the time allowed by law has expired, is addressed to the sound discretion of the trial court, and its action thereon will not be disturbed on appeal, unless there is an abuse of discretion. This rule has so often been declared and applied by this court that it is useless to cite authorities. Each case must depend on its own peculiar facts."
The appellate court is less apt to interfere with the trial court's discretion when the judgment was set *Page 441 
aside than when it was not, for in the former case the cause is reopened and justice will yet be done on the merits between the parties. Hall v. McConey, 152 Mo. App. 1, 132 S.W. 618. This rule is stated as follows in 1 Freeman on Judgments (5th ed.) 579, § 291:
 "An appellate court, owing to the remedial character of the statutes and the policy of applying them liberally to permit an opportunity to present a substantial defense where that right would otherwise be lost, listens somewhat more readily to an appeal from an order denying relief than to one granting relief. While it will usually sustain the action of the court below, whether for or against the motion — even though upon the same state of facts it would have sustained an opposite conclusion — it is much more disposed to affirm an order when the result is to compel a trial upon the merits than it is when the judgment has been allowed to stand and it appears that a substantial defense could be made. This explains what might otherwise seem to be a conflict in some of the decisions."
The discretion of which the statute speaks is a legal discretion to be exercised in conformity with the spirit of the law and in a manner to subserve and not to defeat the ends of justice. Snyder v. Consolidated Highway Company, 157 Or. 479,485, 72 P.2d 932, and other Oregon cases there cited. It is said by an authority relied on by counsel for plaintiff:
 "* * * If the moving party makes a clear and unquestionable showing that he has a good defense or cause of action on the merits, of the benefit of which he has been deprived without fault on his part, the court has no discretion to deny him relief, and should it do so, its action will be set aside, and proper relief ordered by the appellate court." 1 Freeman on Judgments (5th ed.) 578, § 291. *Page 442 
The statute is to be construed liberally to the end that every litigant shall have his day in court and his rights and duties determined only after a trial upon the merits of the controversy. Marsters v. Ashton, 165 Or. 507, 516,107 P.2d 981; Snyder v. Consolidated Highway Company, supra, 157 Or. 484; Peter v. Dietrich, 145 Or. 589, 594, 595, 27 P.2d 1015;Hanthorn v. Oliver, 32 Or. 57, 62, 51 P. 440, 67 Am. St. Rep. 518.
In this case the defendant Mitchell had available to him the same defense which the Circuit Court held to be good on the demurrer of his co-defendant, namely, that the action was barred by the statute of limitations. The defense of the statute of limitations is not a "technical" one in the invidious sense of that word, but is considered meritorious, since statutes of limitation are looked on with favor as statutes of repose.Eastman v. Crary, 131 Or. 694, 697, 698, 284 P. 280; Koop v.Cook, 67 Or. 93, 97, 135 P. 317; Mitchell v. Campbell, 14 Or. 454,459, 13 P. 190.
None of this is disputed by the plaintiff. The whole controversy centers upon the question whether the defendant Mitchell's showing of "mistake, inadvertence or excusable neglect" was such that it was an abuse of discretion on the part of the court to refuse to relieve him from the judgment. In our opinion, Mitchell was entirely warranted in relying upon the assurance of Maitland that the Lumber Company would defend the action for him. It is not denied that Maitland was "the person directly responsible in said company for the handling of such matters." It is the practice in modern industry, where an employer and his employee are sued by a third party for injuries claimed to have been caused by the employee's negligence in the operation of a motor vehicle on the business of the employer, for the latter to undertake *Page 443 
the defense of the action for both. This is a fact of common knowledge. Almost universally, as in the present instance, the employer is protected by public liability insurance, which covers the employee as well as himself in such cases, and the insurance carrier provides the defense for both. Only an exceptionally untutored person in Mitchell's position would have been ignorant of these facts, or would have thought it necessary to retain his own lawyer for the defense of the action. What Mitchell did was what any normal man in his position — what "a man of ordinary prudence" (Freeman, op. cit., 484, § 243) — would have done. Since this is so, we can conceive of no good reason why the judgment should not have been vacated.
There are many cases in the books in which reliance by one party on another to look after the defense of an action for him has been held to be ground for vacating a default judgment. Several such cases are reviewed in Marsters v. Ashton, supra,165 Or. 515, 516, in which we held that the Circuit Court did not abuse its discretion in denying the relief sought by a defaulting defendant. The plaintiff relies on this decision, but the facts of the two cases are quite different. In the Marsters case the representations to the defaulting defendant were made by persons who "were strangers to him" and "were not parties to the litigation". The opinion calls attention to other circumstances, such as the vague character of the representations, which should have caused a prudent man to hesitate about relying on them. On the other hand, the decisions reviewed in the Marsters case and held to be distinguishable, presented facts more nearly like those with which we are concerned here. "In all these cases", we said, "the assurances were definite and some special relationship is shown to have existed *Page 444 
between the defendants which would justify the one in relying on the other." The particular circumstances of these cases are briefly stated in the opinion and need not be her repeated. Other illustrative cases may be found cited in the note in Ann. Cas. 1913E 752. Generally, as these decisions show, where a defendant has left his case in the hands of a co-defendant and a default resulted from the co-defendant's neglect, the court has vacated the default. The refusal to do so was held to be an abuse of discretion in Hall v. McConey, supra.
Although the precedents are useful as guides for decision, one case can hardly be said to control another, since it is doubtful whether two cases are to be found with identical facts. Each case must be determined, as we have said, on its own peculiar facts. "The question always is", Mr. Freeman says, "was the defendant reasonably justified under the circumstances in relying upon such a promise, or, in other words, was his neglect to attend to the matter himself, excusable." Freeman, op. cit, 492, § 246.
It is argued by the plaintiff that the defendant Mitchell should not be excused for the reason, among others, that the facts stated in the affidavits in support of the motion are not the real facts. Attention is called to the discrepancy between the affidavit of Mitchell, who said that he heard nothing further from Maitland or other officials of the Lumber Company after delivering to Maitland the copies of summons and complaint, and the affidavit of Maitland, who said that Mitchell afterwards inquired as to the progress of the case, and he informed Mitchell that he was being defended by the insurance carrier. The latter statement, it is argued, "brands him (Maitland) as a barefaced prevaricator if in fact he made it", because *Page 445 
Mitchell was not being defended by the insurance carrier. And we are referred to the following recital in the court's order denying the motion: "That the defendant Mitchell, following service upon him, took the papers so served and delivered them to a fellow employee of the Edward Hines Lumber Company and then made no further inquiries and did absolutely nothing further until after the judgment was entered against him on May 12th, 1948."
If the foregoing recital constituted all the facts, the action of the court would have been right. But they are not all the facts. Neither the status of the "fellow employee" nor his assurances to Mitchell are mentioned. In other words, the vital circumstances which determine whether or not Mitchell's failure to defend the action himself was excusable are ignored. We cannot accept such a whittling down of the evidence. This is not a case where the court below has found facts on conflicting oral testimony. The facts are in the affidavits and the record, and this court is in as good a position as the Circuit Court to say what they are. See, Cleek v. Virginia Gold Mining MillingCo., 63 Ida. 445, 122 P.2d 232; Kynaston v. Thorpe,29 Ida. 302, 305, 158 P. 790. Counsel for the plaintiff chose not to attempt to controvert these facts and to let the decision depend upon the defendant's showing. Had they desired to cross-examine the defendant and his witnesses, there can be no doubt that the court would have accorded them that privilege. Mitchell, indeed, in his affidavit offered to present Maitland as a witness, but the plaintiff did not accept the offer. The discrepancy between their affidavits does not convict either one of falsehood. An exact agreement in the testimony of witnesses as to all details of a transaction sometimes excites justifiable suspicion. *Page 446 
But a difference in statement between two witnesses when there has been full opportunity for them to get together and make their stories match, as there was here, does not necessarily call for a judgment that either witness was dishonest, but merely that one of them was mistaken or that his memory was faulty. Which one is a matter of no moment, so far as the present case is concerned, for the important fact is that Mitchell relied, and had a right to rely, on Maitland's assurance that the Lumber Company would defend the action. Nor is Maitland to be convicted of deliberate falsehood because he swore that he told Mitchell that he was being defended by the insurance carrier. Certainly he would have every reason to assume that such was the fact. Plaintiff's counsel themselves assume in their brief that the insurance policy "contains the usual clause obligating the insurance company to defend not only the named insured but also any employee or other person operating the vehicle with its consent."
Counsel for plaintiff further argue at length that the failure to interpose a defense for Mitchell must have been due to a mistake of the insurance carrier and that "If the statute gives the right to open or vacate a judgment taken against a party through `his' mistake, no mistake made by any other party will justify this action" (citing 34 C.J., Judgments, 298, § 516, and 49 C.J.S., Judgments, 626, 627, § 334). As the authorities cited in the texts referred to show, the foregoing statement has no application to a case like this. The rule invoked has to do with cases in which the party seeking relief made no mistake himself and the default was due wholly to the mistake of others — in several, to a mistake of the court. In those cases where defaults have been opened because of justifiable reliance on the promise of a third party to defend the *Page 447 
action, it will usually be found that there would have been no default but for an inadvertence or neglect of such third party. See cases cited in Ann. Cas. 1913E 573.
It is contended by the plaintiff that Mitchell had no right to rely on Maitland's promise because the Lumber Company was under no duty to defend the action. No authority for this view is cited and we have found none. To adopt it would be to substitute a hard and fast rule in this class of cases for the rule of justifiable reliance under the particular circumstances of the case laid down by Mr. Freeman, which we have heretofore quoted and which is quoted in plaintiff's brief with apparent approval. The same considerations apply to plaintiff's contention based on the assumed fact that Maitland had no authority to bind the corporation. Whether he had such authority or not, Maitland, as the plaintiff's brief concedes, was the man with whom Mitchell was expected to deal. He was "the person directly responsible in said company for the handling of such matters". This case is not to be treated as one involving the law of contracts. It should not be held that Mitchell, an ordinary working man, was required to seek out an officer of the corporation and ascertain his authority in order to receive the benefit of the rule of justifiable reliance.
It is argued that, while the motion to vacate the judgment was made within five days after its entry, that motion did not come until more than six months after entry of the order of default; that the judgment could have been entered at any time after the default; and that it was inexcusable negligence on Mitchell's part not to have learned of the default order and moved to vacate it soon after it was entered. It is not *Page 448 
disputed that Mitchell acted promptly upon learning that judgment had been taken against him. He received this information because a copy of the judgment order containing an order affecting the rights of the Lumber Company, namely, the order sustaining its demurrer, was sent to the attorneys for the Lumber Company, his employer. What would have been the situation had the judgment been entered at some earlier date is a profitless inquiry. Having, for reasons which this court deems sufficient, relied on the Lumber Company to defend the action for him, there was no requirement of diligence on Mitchell's part that he watch the records to see if a default order had been entered against him. His only duty was to act promptly upon learning the facts. This he did.
We have examined the sixteen Oregon cases, of which the earliest is Crandall v. Piette, 1 Or. 226, and the most recent,Merryman v. Colonial Realty Co., 168 Or. 12, 120 P.2d 230, which the plaintiff cites to the proposition that this court will not review the discretion of the Circuit Court unless we can say "beyond a reasonable doubt, that there has been a clear and plain abuse" of discretion. This court has repeatedly laid down the rule that it will not reverse in this class of cases except for a "clear" or "plain" or "manifest" abuse of discretion. In one case, Carmichael v. Carmichael, 101 Or. 172, 176, 199 P. 385, the court quoted a passage (to which particular attention is called by plaintiff) from Bailey v. Taffe, 29 Cal. 423, which includes the following sentence: "If, on the contrary, we are satisfied beyond a reasonable doubt that the Court below has come to an erroneous conclusion, the party complaining of the error is as much entitled to a reversal in a case like the present as any other". See, also, Freeman, op. cit., 578, § 291; 1 Black on Judgments *Page 449 
(2d ed.) 554, § 354. Whether there is a real difference between the statement of the rule by the California court and those by this court, may be questioned; it is probably largely a matter of semantics. However that may be, we have no reasonable doubt that in this case error was committed in denying the motion to vacate, and that the case falls clearly within the following pronouncement in Black, op. cit., 555: "On the other hand, if adequate cause for setting aside the judgment is shown by the uncontradicted evidence or affidavits of the petitioner, the court must grant relief; it has no discretion to refuse".
The motion to vacate does not in terms refer to the order of default, but only to the judgment. It is to be regarded, nevertheless, as a motion to set aside default and judgment.First National Bank v. Pine Shores Realty Co., 257 Mich. 289,241 N.W. 190.
For the foregoing reasons, the order appealed from is reversed and the cause remanded for further proceedings in conformity to this opinion.
PAGE, J., did not participate in this decision.